Matthew M. Clarke, State Bar No. 184959
Dugan P. Kelley, State Bar No. 207347
Matthew N. Mong, State Bar No. 273337
CHRISTMAN, KELLEY & CLARKE, PC
1334 Anacapa Street
Santa Barbara, CA 93101
Telephone: (805) 884-9922
Facsimile: (866) 611-9852

Attorneys for Plaintiff SAVE THE VALLEY, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE THE VALLEY, LLC, a California Limited Liability Company,<br><br>          Plaintiff,<br><br>vs.<br><br>THE SANTA YNEZ BAND OF CHUMASH INDIANS, an Indian Tribe, VINCENT ARMENTA, Tribal Chairman for the Santa Ynez Band of Mission Indians; GARY PACE, KENNETH KAHN, RICHARD GOMEZ, and DAVID DOMINGUEZ as Business Committee Members for the Santa Ynez Band of Mission Indians,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>   **1. DECLARATORY JUDGMENT**<br>   **2. PERMANENT INJUNCTION** |

Plaintiff SAVE THE VALLEY, LLC ("Plaintiff") hereby complains against Defendants THE SANTA YNEZ BAND OF CHUMASH INDIANS, an Indian Tribe, VINCENT ARMENTA, Tribal Chairman for the Santa Ynez Band of Mission Indians; GARY PACE, KENNETH KAHN, RICHARD GOMEZ, and DAVID DOMINGUEZ as Business Committee Members for the Santa Ynez Band of Mission Indians (collectively referred to as "Defendants"), and alleges as follows:

1. All allegations in this Complaint are based upon information and belief with the exception of those allegations, which are based upon personal knowledge. Plaintiff's information and belief is based upon Plaintiff's own investigation and the informal discovery and investigation conducted by Plaintiff's counsel to date. Each allegation in this Complaint either has evidentiary support, or alternatively, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

2. A valid, recorded judgment of the Santa Barbara Superior Court restricts the use of the real property at issue in this case to domestic use, i.e., residential use. Despite that restriction, Defendants are building a hulking 12-story, high-rise hotel / casino expansion on that real property to support their existing gambling business. Defendants' project violates local, state and federal environmental regulations, zoning regulations, health and safety regulations.

3. Defendants insist that the real property is federal "tribal trust" land (which it is not), thereby entitling them to use the land for whatever they want, including gambling, their envisioned high-rise hotel, and massive parking structures, all of which are violations of local, state and federal law concerning this land. Accordingly, Plaintiff brings suit seeking a judgment from this Court concerning the rights and duties of the parties vis a vis this real property.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and

1

28 U.S.C. § 2201 (Declaratory Judgment Act).

5. Venue is appropriate in this district under 28 U.S.C. § 1391 because all of the Defendants reside in this district. Venue is also appropriate in this district because all of the events or omissions giving rise to Plaintiff's claims occurred in this district. Furthermore, all of the property that is the subject of the action is situated in this district.

## THE PARTIES

6. Plaintiff is a California Limited Liability Company with its principal office in Santa Ynez, California, adjacent to the real property at issue in this case. Plaintiff is an organization comprised of Defendants' neighbors, adjacent property owners, users of the Santa Ynez airport which is also adjacent to the property at issue in this case. Plaintiff and its constituents are justifiably concerned with the preservation of Santa Barbara County's beautiful Santa Ynez Valley, including the health, safety, welfare, and environment of all citizens and residents in the valley who are and will be impacted by the construction and expansion of the hotel and associated gambling business.

7. Plaintiff, its members and constituents have standing because they will suffer injury in fact if the Defendants are allowed to further develop their property as described below. The current property values in the Santa Ynez Valley derive from the low density, spacious, rural setting and agricultural (e.g., vineyards and livestock) and the equestrian uses of the land. Adding to the natural beauty and favorable property values is the complete lack of tall buildings protruding into the skyline. Property values of the residential and ranch land owned by Plaintiff's members and constituents will decrease if Defendants complete their illegal construction project. The ongoing project described below is a vast expansion of the high density hotel and gambling operation. This project violates state and federal law and is in direct conflict with the existing use of the Santa Ynez Valley.

8. Furthermore, Plaintiff, its members and constituents have standing to sue

these Defendants because the Defendants' illegal construction project is the cause of the injuries described above. By engaging in the illegal construction on land that is not in a federal Indian trust, Defendant have and will cause direct injury to Plaintiff, its members and constituents, namely a sharp decrease in property values and use and enjoyment of their real property.

9. Thirdly, Plaintiff, its members and constituents have standing to sue these Defendants because this Court can address these wrongs in this case. If the Court enters judgment as prayed for in this case, it will establish that the real property at issue is not in a federal Indian trust. If this is the case, the project may not go forward because it violates a host of local, state and federal law.

10. The Santa Ynez Band of Chumash Indians is an Indian Tribe located within the County of Santa Barbara, State of California. The balance of the Defendants are tribal executives, officers and leaders of the Santa Ynez Band of Mission Indians. Defendants and their tribal members occupy the real property at issue in this matter. The individual Defendants are sued herein in their official capacity as Chairman and Business Committee members. Defendants reside within the County of Santa Barbara, California and within this judicial district.

11. Defendants have no sovereign immunity to this suit. Sovereign immunity does not apply because this is an *in rem* proceeding concerning real property held in fee.

12. Whenever in the Complaint reference is made to "Defendants, and each of them" such allegations shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

13. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants were the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned, acting with the course, scope, purpose, consent, knowledge, ratification, and authorization for such agency, employment, joint venture and

1 conspiracy.

## THE REAL PROPERTY AND PROJECT AT ISSUE

14. Defendants are building a new gambling casino expansion, 12-story high rise hotel, new restaurant and administrative space, and new 5-story parking structure ("project"). The project will encompass over 500,000 square feet and is projected to *service* over 10,000 visitors per day.

15. The project is being built on real property adjacent to State Route 246 and near Santa Ynez, California. This is a beautiful rural setting in the unspoiled valley behind Santa Barbara, California. The real property at issue was acquired in fee by the United States from the Catholic Church pursuant to a quit claim deed on January 29, 1938. Attached as Exhibit A is a true and correct copy of the quit claim deed ("real property"). The quit claim deed transferred a 75 acre parcel that is the site of Defendants' project.

16. Contrary to Defendants' assertion, the real property described here is not a Federal Indian reservation, nor has it ever been a Federal Indian reservation. No President, Congress, Treaty, or Secretary of the Interior has even taken the real property "into trust" for any Indian tribe. As such, the real property and project at issue here is <u>not</u> federally protected Indian Trust land and is not immune from the law that applies to ordinary land owners. Specifically, the real property where the Defendants are carrying out their project is not in trust for the Defendants, Santa Ynez Band of Mission Indians, or any Indian tribe.

17. Since 1938, the real property has been owned in fee and is encumbered by several key restrictions which prohibit the proposed project. Attached as Exhibit B is a true and correct copy of a map published as recently as March 2014 which demonstrates that the real property is not a Federal Reservation.

///

///

///

## GENERAL ALLEGATIONS

**Historical Restrictions Running With the Real Property:**

18. On January 18th 1897, there was a lawsuit filed to quiet title to the real property. The owner of the real property at that time was the Catholic Church.[1] Some of Santa Ynez Area Indians were recent converts to the Catholic faith, and the Catholic Church had allowed the Santa Ynez Indians to use certain portions of the land for "domestic use" and for the "[w]atering of stock and for purposes of irrigation of said parcel or tract of land but for no other purposes." Attached as Exhibit C is a true and correct copy of the Judgment entered in that matter on Santa Barbara Superior Court Case No. 3926, page 9. The Catholic Church sought to quiet title and impose those restrictions on the land which the "Santa Ynez" Indians who were using the real property for specific purposes. The real property involved in the quiet title action brought by the Catholic Church is the exact location of the Defendants' proposed project.

19. After some delay in the court proceedings, the Catholic Church prevailed. The Santa Barbara Superior Court entered judgment for the Catholic Church and against the United States of America and the Santa Ynez Indians on March 31, 1906. Exhibit C, page 18. The judgment was recorded in the Santa Barbara County Recorders Offices, quieting title to that approximately 75 acre parcel of land (the project). The judgment and subsequent recording notified all concerned that the parcel was exclusively owned by the Catholic Church and Archdiocese along with a large grant of land consisting of approximately 11,500 acres. The larger parcel and the 75 acre parcel were part of a large tract commonly known as Canada de Los Pinos (or College Rancho), all of which the Superior Court found was owned in fee simple

---

[1] It was only after July 2014, when the Defendants announced their project that is in violation of federal, state, and local laws, was the Plaintiff able to uncover the judgment impacting the real-property at issue in this suit.

5

1 by the Catholic Church. Exhibit C, page 10.

2     20. By an ancillary agreement incorporated into the 1906 judgment, the Indian descendants were allowed to live on the property. Descendants of the very same Indians and the very same parcel of land are at issue in this case. Defendants in this case descended from the Indian descendants in the Catholic Church case and the parcel of land is the site of the massive commercial real estate project.

    21. The judgment allowed the Santa Ynez Indians (their descendants) to remain on the 75 acre parcel as occupants only. However, the judgment restricted their use of the real property and imposed on the Indians the obligation to use the land only for "domestic use" and for the "[w]atering of stock and for purposes of irrigation of said parcel or tract of land but for no other purposes." Exhibit C, page 9. In particular, Defendants' predecessors were permitted to reside and occupy that approximately 75 acre parcel of land, but Defendants and their predecessors had only a right of occupation and use for farming and residential use. Additional covenants, conditions, and restrictions set out in the 1906 judgment were recorded in 1906 in order to run with the land. Exhibit C.

    22. These additional restrictions directly impacted, adjudicated, and decreed that the U.S., the Santa Ynez Indians and any descendant who might occupy the real property in the future, were forever barred and enjoined from claiming any right, title and interest in that land beyond the right of occupancy and for residential uses only including access to the waters of the Zanja Cota Creek, but to use no more water than those water rights that were granted in that judgment.

    23. The United States is bound by the judgment because it was a party to that lawsuit through Lucias Wright. Mr. Wright was the Indian agent for the United States for the Tule Indian District, in which this parcel of land was located. The United States of America by Mr. Wright submitted to the jurisdiction of the Santa Barbara County Superior Court and was bound by all the covenants, terms, conditions and restrictions placed on the land, including those which were to run with

the land and be binding upon any and all assigns and successors in interest of the owners holding legal title to the land in the future.

24. In particular, the Court held and entered judgment that, "….[N]either said Band or Village of Mission Indians known as Santa Ynez Indians nor any present or future member thereof nor any of said defendants… and Lucius A. Wright as Agent of the United Sates for the Indians of the Mission Tule River Agency in California has or have any estate, right, title or interest whatsoever in or to said two parcels of land last above described or either of them or any part thereof or of either of them or in the waters of said Zanja Cota Creek or Cota Creek or any part thereof and that said Band or Village of Mission Indians known as Santa Ynez Indians and all the present and future members thereof and said defendants and all and every one of them be and hereby are further enjoined, restrained and debarred from making or asserting in any way any claim whatever adverse to said plaintiff in or to said two last described parcels of land or either of them or in or to any part thereof or of either of them or to or in the water of said Zanja Cota Creek or Cota Creek or to or in any part thereof." Exhibit C, page 18.

25. That judgment was not appealed nor was it later modified in any way. The judgment is still legally enforceable today. Unfortunately, the Defendants have decided to disregard their obligations under the judgment and the covenants running with the real property. In particular, this project on the real property is a violation because it is not even remotely a domestic or residential use but rather a purely commercial endeavor.

26. On January 29, 1938, a quit claim deed was recorded whereby the Catholic Church transferred ownership of the property after the 1906 judgment was entered. Exhibit A. However, the same restrictions on the use of the land were contained in the quit claim deed, including "domestic use" and for the "[w]atering of stock and for purposes of irrigation of on that certain tract of land…" See Exhibit A.

///

**Defendants Begin to Construct a Massive Commercial Project That Impacts the Entire Santa Ynez Valley:**

27. In July 2014, the Defendants announced the project to construct a new 12-story high rise hotel and casino expansion, a new restaurant and administrative space, and new 5-story parking structure. The project will encompass over 500,000 square feet and is projected to *service* over 10,000 visitors per day. The size, height and scope of this massive project is entirely unheard of in the rural setting of the Santa Ynez Valley. Presently, the tallest building currently in the Santa Ynez Valley is 3 stories. It is expected that there will be an enormous and oppressive impact on existing infrastructure for the Santa Ynez Valley and its residents.

28. The Defendants are constructing their project on federally owned, encumbered and restricted fee land. Generally applicable laws such as building codes, regulations, etc., apply to this real property. The Defendants are clearly under the mistaken belief that the real property is unencumbered and held in trust for them by the Federal Government. Under that mistaken belief, they have undertaken a project that does not conform to the existing County zoning and building ordinances. The project is in violation of numerous local, state and federal laws, rules, ordinances and safety regulations, including the existing Santa Barbara County General Plan.

**Defendants' Project Violates Federal, State, and Local Laws:**

29. The California state Government, the Santa Barbara County government, its Board of Supervisors and their various government agencies, as well as the Santa Ynez Airport Commission, the ID1 Water District, the Santa Barbara County Association of Governments (hereinafter SBCAG), and numerous nearby land owners, citizens, citizen groups, associations and residents of the Santa Ynez Valley community, timely submitted written comments addressing the project.

30. The public comments pointed out how the project violated state and county laws, ordinances, rules and regulations which prohibit the project and, at the

least in many cases, also requires alteration and mitigation of the project and its negative impacts. The project as currently configured is not legal and violates many laws, ordinances, rules and regulations, many of which were enacted to provide the public safety, welfare, convenience and environment and are set out in the existing Santa Ynez Valley Community Plan. Attached as Exhibit D are true and correct copies of objections by state and local agencies concerning the project.

31. After receiving the numerous and thorough complaints, the Defendants' published a final "Environmental Evaluation" dated September 2014. That document compiles the many objections in a booklet. Defendants attempt to respond to the issues raised by objectors, but their responses are indecipherable, evasive and in most occasions, the Defendants simply state they are not bound by generally applicable laws because the Proposed Project is located on land held in trust for the Tribe. Attached as Exhibit E is a true and correct copy of the Defendants' Final EE for the project.

32. The project violates the following local, state and federal laws:
- Violations of the National Environmental Policy Act, 42 U.S.C. §§ 4331, *et. seq*. as the Defendants refused and failed to prepare even an initial report that is compliant;
- Violations of the California Environmental Quality Act, Public Resources Code, §§ 21000 *et. seq.*, as the Defendants refused and failed to prepare even an initial report that is compliant;
- Violations for height restrictions around the Santa Ynez airport (see attached Exhibit J which illustrate the proximity of the proposed 12 story tower to the runway;
- Violations of existing noise ordinances;
- Violations of existing fire safety standards;
- Violations of existing traffic circulation standards/traffic impact;
- Violation of current aesthetic standards for the Santa Ynez Valley;

9

- Violations of existing safety standards around the Santa Ynez airport that may result in death or injury to planes, Santa Ynez residents and visitors, and real and personal belonging to Santa Ynez residents and visitors; and
- Violations of water expansion, consumption, and mitigation measures.

33. The violations concerning the Santa Ynez airport and safety zones are some of the most troubling. Among other things, Defendants plan to build the high-rise hotel and expanded casino project at the foot of a runway at the Santa Ynez airport. As the Airport Authority points out, the proposed structure violates County ordinances enacted for the health and safety of persons who live in or live on nearby lands or who may be found on the real property and project site, which is open to the public. One example of such ordinance prohibits certain types, size and human capacity of structures located within the Airport Runway approach safety zones. Attached as Exhibit F is a true and correct copy of that ordinance.

**Defendants Thumb Their Noses at Federal, State, and Local Laws:**

34. Rather than modify the project to correct violations of law, Defendants proclaim that the real property is "Indian tribal trust lands." Defendants state, "[T]he Comprehensive Plan and Santa Ynez Valley Airport Land Use Plan do not apply to trust land." Based on this, Defendants have failed, refused and neglected to remove, alter or mitigate the dangerous elements included in the project or abandon it. Defendants unequivocally contend that they will proceed with the project as proposed.

35. In addition, the Defendants wrongly contend that this project is exempt from legal compliance and immune from all the laws, rules, ordinances and regulations because the federal fee owned land on which the project is proposed to be constructed was claimed to be "Indian tribal trust lands." Attached as Exhibit G.

///

///

**The Real Property is Not Indian Tribal Trust Land:**

36. Although the Defendants refer to the real property as if it were an established federal "Indian reservation" it is not now and never has been a Federal Indian reservation. The real property has never been transferred into trust by Congress, treaty, Presidential decree or Presidential "set aside," nor has it been taken and accepted into trust by the Secretary of Interior under the provisions of Title 25 U.S.C. sections 465 *et. seq.*

37. Further, as set forth above, the real property on which the project is proposed to be built is not federal Indian trust land and instead the land on which the project is proposed is federal fee owned lands given to the United States as a gift from the Catholic Church. The title transferred by the Catholic Church to the United States Government by quit claim deed restricted the use of the land in conformance with the judgment described above.

38. The project site is therefore not Indian trust land, as provided for and required by the provisions of 25 U.S.C. 465 in order to be classified as federal Indian trust land. It is therefore simply fee owned land encumbered by restrictions which run with the land. Therefore, the Defendants' proposed development must conform to all applicable state and local laws, rules, regulations and ordinances as well as all of the applicable federal laws and, is required to comply with the provisions, purposes and intent of title 40 United States Code section 531 *et. seq.* requiring compliance with all applicable and related rules, regulations and ordinances of the County of Santa Barbara, State of California, and CEQA and NEPA for any project constructed on federal lands.

39. Even if we assume that the Catholic Church *gifted* the land to the Indian descendants, the land would nevertheless only be Indian owned fee land. Although the Catholic Church may gift to the Indians land with a restrictive covenant, the Catholic Church has no power or authority to impose a trust relationship or create a federal Indian trust upon the United States or upon the land donated. It is well-

11

established that only the United States (and not the Defendants) as trustee can accept land into trust for the Indians. Some of the descendants of the original occupants named in the 1906 lawsuit are <u>still</u> to this day occupying this parcel of land with the permission of the federal government. Since that 1906 judgment, the real property has never been placed in trust. The land is not and has never been a "Federal Indian reservation" as required by federal laws in order to lawfully create any Federal Indian reservation. Similarly, it has never accepted into trust for such purpose as required by 25 U.S.C. section 465.

40. The United States Bureau of Land Management and the Department of Interior identify each and every Federal Indian reservation in California. Defendants claim they occupy the "Santa Ynez Federal Indian Reservation". But this purported reservation is not included in the official maps of Indian reservations. See Exhibit B, a true and correct copy of a recent map, dated March 2014, showing the absence of the real property at issue being included in a Federal Indian reservation. The real property in question in not on the map of Federal Indian reservations because it is not a Federal Indian reservation.

41. The real property has been and continues to be under the jurisdiction and control of the County of Santa Barbara, the State of California, and other governmental authorities. As such, the Defendants must comply with all safety, environmental, and judicial requirements in connection with this real property and the project. Since the Defendants have refused to follow the law, this suit is necessary <u>and there is no other recourse to appeal or legally challenge the final Environmental Evaluation (EE) executed and certified by the Business Committee Members for the Santa Ynez Band of Mission Indians (collectively referred to as "Defendants").</u>

///

///

///

12

# FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT
## (Against All Defendants)

42. Plaintiff alleges and incorporates each and every allegation contained in the preceding paragraphs as though fully incorporated herein and made a part hereof.

43. An actual controversy has arisen and now exists between the Plaintiff and Defendants concerning the real property and the commercial real estate development project described in this lawsuit. In particular, Defendants refuse to comply with national, state, and local laws protecting the health and safety of the residents of the Santa Ynez Valley, including the Plaintiff. Defendants assert they are not bound by the Santa Barbara County Comprehensive Plan and Santa Ynez Valley Airport Land Use Plan, among other local, state and federal laws.

44. Furthermore, Defendants' proposed project will violate the restrictive covenants adjudicated by the Superior Court for the County of Santa Barbara. The covenants restricted the use of the real property by these Defendants to domestic, non-commercial use. The proposed project is a large-scale commercial development which violates the restrictive covenant.

45. As a direct and proximate result of the false claims of these Defendants asserting they are exempt and immune from the restrictive covenants and the many national, state and local laws, rules, regulations and ordinances applicable to the project, and their claim, that the property is "Indian Trust land," Plaintiff is directly threatened by the illegal and dangerous conditions being created and which will continue to be created by construction of the project. Plaintiff, the community and the environment will be harmed by overburdening of community infrastructure and natural resources.

46. Defendants have commenced the proposed casino expansion/ hotel commercial real estate development project. Defendants will complete the project without complying with applicable federal, state and local laws, ordinances, rules, regulations and the legal process and all procedures required by CEQA and NEPA

including all state and local laws made applicable to this project by federal law. The project is illegal. Unlawful approval for the project was made and given by the named Defendants herein illegally acting in their official capacity as officers and agents of the Santa Ynez Band of Mission Indians.

47. A true and justiciable controversy exists between Plaintiff and these Defendants. Defendants contend they may build with impunity. Plaintiff contends Defendants are bound by restrictive covenants running with their land, local, state and federal laws.

48. Plaintiff seeks a judicial determination and judgment concerning the correct legal status of this land. The Court should determine whether it is federal fee land occupied by Defendants, or alternatively, that it is Indian owned fee land. In any case, the Court should determine that the land is subject to 40 U.S.C. 531 and to all state and local laws, rules, regulations and ordinances, as well as all of the provisions of the National Environmental Policy Act and the California Environmental Quality Act and applicable provisions, rules and regulations that are set out in the County General Plan.

49. Further, Plaintiff seeks a judicial determination and judgment requiring the Defendants to conform and comply with all local, state, and federal laws, rules and regulations which apply to Defendants' proposed project.

50. A judicial declaration is necessary and appropriate at this time under the circumstances as set forth herein.

## SECOND CAUSE OF ACTION FOR INJUNCTION
### (Against all Defendants)

51. Plaintiff alleges and incorporates each and every allegation contained in the preceding paragraphs as though fully incorporated herein and made a part hereof.

52. As alleged herein, a dispute exists between the Plaintiff and Defendants concerning the real property and the project described above. In particular,

1 Defendants refuse to comply with national, state, and local laws protecting the health
2 and safety of the residents of the Santa Ynez Valley, including the Plaintiff.

3     53. If Defendants are allowed to build their proposed commercial hotel and
4 expanded gambling facility, Plaintiff will be harmed and suffer damages as a direct
5 and proximate result. Plaintiff is directly harmed and threatened by the illegal and
6 dangerous structure Defendants are building. If the structure is ever completed and
7 put into service, Plaintiff, the community and the environment will be subjected to
8 the dangerous and unsafe development threatened by this project. All of those
9 concerns are described in detail in the voluminous comments by the California State
10 Government, the Santa Barbara County government, its Board of Supervisors,
11 various local government agencies, the Santa Ynez Airport Commission, the ID1
12 Water District, the SBCAG, and numerous nearby land owners, citizens, citizen
13 groups, associations and residents of the Santa Ynez Valley community.

14     54. Defendants will proceed with the proposed project unless this Honorable
15 Court grants an injunction.

16     55. Plaintiff has no other plain, speedy and adequate remedy at law or in
17 equity to preserve and protect the health, safety, welfare of Plaintiff's members and
18 the community. The environment, the community, Plaintiff and its members will be
19 irreparably harmed, injured and damaged if this dangerous and unlawful project
20 continues to be allowed to be constructed and proceed as threatened in the "Notice of
21 Adoption and Approval." Attached as Exhibit H is a true and correct copy of
22 Defendants' intention to go forward on the project. Attached also as Exhibit I is a
23 true and correct recent photograph showing that the construction of the project has
24 begun.

25     56. In order to protect Plaintiff from this irreparable harm, each of the named
26 Defendants and their agents, servants, and employees should be enjoined, stayed, and
27 prevented from, among other things, going forward with the project on the real
28 property, any further construction of the proposed project which was approved solely

by Defendants themselves, purporting to act lawfully in their official capacity, unless and until Defendants correct, conform and comply with all State and local laws, rules, ordinances and regulations that apply to the project and would apply either to federally owned fee lands or any fee owned Indian lands for any such project or construction within the jurisdiction and control of State of California and the government of Santa Barbara County and their respective regulatory agencies and there is full conformance with 40 U.S.C. 531-536, and with National Environmental Policy Act [NEPA], and the California Environmental Quality Act [CEQA] and applicable provisions, rules and regulations that are set out in the County General Plan.

57. Plaintiff seeks a determination by a jury on all claims for which Plaintiff is legally entitled to a jury.

## PRAYER

WHEREFORE, Plaintiff prays for judgment and relief on the Complaint as follows:

1. A declaratory judgment and determination from this Court that:
   a. The real property is federally owned fee land which may be occupied by Defendants for domestic use only;
   b. Alternatively, the real property is owned in fee by Defendants and restricted to domestic use only;
   c. The real property is subject to 40 U.S.C. 531, state and local laws, rules, regulations and ordinances, as well as all of the provisions of the National Environmental Policy Act and the California Environmental Quality Act and applicable provisions, rules and regulations that are set out in the County General Plan.
   d. All of Defendants' uses of the real property shall conform and comply with aforementioned laws, rules, regulations and restrictions and covenants running with the land.

2. For temporary, preliminary, and permanent injunctive relief enjoining, staying, and preventing any further construction of the proposed project as contemplated.
3. For reasonable attorneys' fees on all applicable claims;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court may deem necessary or appropriate.

DATED: April 3, 2015                         CHRISTMAN, KELLEY & CLARKE, PC


By: _/s/ Matthew Clarke_
Matthew M. Clarke
Dugan P. Kelley
Matthew N. Mong
Attorneys for Plaintiff SAVE THE VALLEY, LLC

17