Andrea Weiss Jeffries (State Bar No. 183408)
andrea.jeffries@wilmerhale.com
Matthew Benedetto (State Bar No. 252379)
matthew.benedetto@wilmerhale.com
David Peer (State Bar No. 301952)
david.peer@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

Attorneys *By Special Appearance* for Defendants
THE SANTA YNEZ BAND
OF CHUMASH MISSION INDIANS,
OF THE SANTA YNEZ RESERVATION,
VINCENT ARMENTA, GARY PACE,
KENNETH KAHN, RICHARD GOMEZ,
and DAVID DOMINGUEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAVE THE VALLEY, LLC, a California Limited Liability Company,<br><br>           Plaintiff,<br><br>vs.<br><br>THE SANTA YNEZ BAND OF CHUMASH INDIANS, an Indian Tribe, VINCENT ARMENTA, Tribal Chairman for the Santa Ynez Band of Mission Indians; GARY PACE, KENNETH KAHN, RICHARD GOMEZ, and DAVID DOMINGUEZ as Business Committee Members for the Santa Ynez Band of Mission Indians,<br><br>           Defendants. | Case No.: 2:15-cv-02463-RGK-MAN<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**<br><br>The Hon. R. Gary Klausner<br><br>Hearing Date: June 22, 2015<br>Time: 9:00 a.m.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner |

## I. INTRODUCTION

Save the Valley attempts to cloud the issues by rewriting the historical record regarding the creation of the Tribe's reservation. That effort is, in a word, fiction. But regardless of the merits of Plaintiff's allegations, its suit is doubly barred by its failure to join the United States and by tribal sovereign immunity. Indeed, Defendants demonstrated in their opening brief and demonstrate again herein that the Court lacks jurisdiction over Plaintiff's claims for these two independent reasons.

*First,* clear and unassailable precedent —which Plaintiff's Opposition ("Opp.") fails to acknowledge, let alone counter —establishes that the United States is a necessary and indispensable party to actions involving Indian land in which the United States claims an interest. This is not only because "a proceeding against property in which the United States has an interest is a suit against the United States," *Minnesota v. United States*, 305 U.S. 382, 387 (1939), but also because the United States is "a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation." *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) (citation omitted). The United States is thus a necessary and indispensable party to this action. Because the United States is immune from suit, it cannot be joined, and thus this action cannot proceed.

*Second*, Defendant Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation is a federally recognized Indian tribe protected from suit by tribal sovereign immunity. Defendants Armenta, Pace, Kahn, Gomez, and Dominguez are Tribal officials sued for acting in their official capacities pursuant to the Tribe's sovereign authority and are thus also shielded by tribal sovereign immunity. In its Complaint, Plaintiff attempted to evade the Defendants' sovereign immunity through a purported "*in rem* jurisdiction" exception. Defendants exposed that theory as meritless in their opening brief, and Plaintiff's opposition does nothing to give even pause as to any of Defendants' three reasons why *in rem* jurisdiction does not justify this action. Plaintiff's newly raised attempt to circumvent the sovereign immunity of the individual

Tribal officers under *Ex parte Young* fares no better. No *Ex parte Young*-style exception can be found to apply to this case where the suit is (i) directed to the actions of the Tribe itself, not to any specific, prospective actions of the Tribe's officers that are sought to be enjoined, and (ii) seeks to strip the Tribe of its beneficial interest in land the Tribe contends is held in trust for it. If allowed to go forward, this lawsuit would impinge directly and severely on the Tribe's sovereignty—even more than an award of damages would—and thus cannot be brought under *Ex parte Young*.

The Court thus lacks jurisdiction over this action and it must be dismissed.

## II.  FACTUAL BACKGROUND

Contrary to Plaintiff's assertion, the Court need not resolve the "critical factual issue" of whether the Santa Ynez Reservation is, in fact, a Federal Indian reservation to determine that it lacks jurisdiction over this action. (*See* Opp. at 14:1-2, 14-17.) However, because Save the Valley's Opposition omits key historical events and is thus confusing and misleading, Defendants provide a brief response.

As the 2012 memorandum prepared by the Solicitor of the Interior[1] confirms, the Santa Ynez Reservation has been reservation land held in trust by the United States for the Tribe since at least 1906. (Dkt. 23-1 at 7.)[2] The land acquired this status in a series of events:

- In 1897, the Roman Catholic Bishop of Monterey filed a lawsuit to quiet title to the land so that the Church could transfer clean title to the United States. (*Id.* at 7; Compl. ¶ 18.)

- In March 1906, judgment issued in favor of the Church, confirming that the Church

---

[1] Plaintiff's criticism of the DOI Memorandum falls flat. (Opp. at 12-13.) While the Memorandum is directed to the acquisition of additional land for the Tribe, it is cited for its clear rendition of the historical record regarding the Santa Ynez Reservation on pp. 7-9 (under the heading "Establishment of the Santa Ynez Reservation for the Chumash Tribe").

[2] For clarity, the pagination referenced in the citations in this brief are to the page numbers on the original documents, not those in the headers affixed upon docketing.

owned the land.  Plaintiff quotes that judgment at length, but omits a key event that occurred thereafter:

- On June 23, 1906, *after* the March judgment was entered, the Catholic Church conveyed the property to the United States to be held in trust for the Tribe. (Dkt. 23-1 at 7; Dkt. 23-2.) Plaintiff's assertion that the 1906 judgment "is still legally enforceable today," (Opp. at 4:6-7), is wrong.  The judgment has *no relevance* to present-day ownership of the land.

- On January 29, 1938, the Church relinquished the easement and reversionary interest that it had retained in the June 1906 transfer, and hence transferred all of its remaining interest in the land to the United States via quitclaim deed.[3] The express purpose of this second and complete transfer was "for the establishment of a ***permanent Indian Reservation*** for the perpetual use and occupancy of the Santa Ynez band of Mission Indians." (Dkt. 2-1 at 465 (emphasis added).)

In its "Corrected Complaint," Save the Valley asserts that the 1938 quit claim failed to transfer the land from the Church to the United States. (Dkt. 24.)[4] But the Church had already transferred the land to the United States more than thirty years earlier by virtue of the June 1906 deed (again, ignored by Plaintiff). (Dkt. 23-1 at 7; Dkt. 23-2 at 414.) As noted, the 1938 transfer involved merely an easement and a reversionary interest (never triggered) retained by the Church in the 1906 deed.  Plaintiff offers no reason why the "attempt" to transfer these interests was not successful; in any event, the 1938 transfer has no bearing on the fact that title to the land had already passed to the United States.[5]

---

[3] Ignoring the June 1906 transfer, Plaintiff contends that only the reversionary rights were transferred. (Opp. at 4:20-22.) This is clearly wrong.

[4] Defendants address this new allegation herein notwithstanding the impropriety of Save the Valley's filing of a "Corrected Complaint" purporting to alter a fundamental factual allegation of the Complaint, appended to a "Notice of Errata." (Dkt. 24.)

[5] Indeed, Plaintiff repeatedly admits that the land at issue is federally owned. (*See* Compl. ¶¶28, 37; Opp. at 17:23.)

## III. ARGUMENT

### A. The Complaint Must Be Dismissed For Non-Joinder Of The United States

Courts have consistently held, as a matter of law, that the United States is a necessary and indispensable party to actions involving Indian land in which the United States claims an interest. This fundamental principle was recognized by the Supreme Court at least as early as 1939 in *Minnesota v. United States*, 305 U.S. 382, 387 (1939). In that case, the Court held that the United States was an indispensable party to a condemnation proceeding against Indian reservation land because "a proceeding against property in which the United States has an interest is a suit against the United States." *Id.* at 386. The Court further explained that the United States also had an interest in the proceedings "in its capacity as trustee for the Indians." *Id.* at 388; *see also Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) (holding that the United States was "a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation."); *Turley v. Eddy*, 70 F. App'x 934, 936 (9th Cir. 2003) (memorandum decision not selected for publication) ("Because Indian trusts lands are at stake, the United States is also a necessary and indispensable party."); *Wendt v. Smith*, 273 F. Supp. 2d 1078, 1084 (C.D. Cal. 2003) ("Since the United States has a colorable claim to the land in the interest of the Chemehuevi Tribe, it is a necessary and indispensable party.").[6]

Here, there is no question that, at a minimum, the United States has a colorable claim that it holds title to the property at issue in trust for the Tribe. (*See* Dkt. 23-1 at 7

---

[6] Plaintiff's belated and procedurally improper (and baseless) allegation that the United States somehow failed to accept the transfer "attempted" by the Catholic Church in 1938 (Dkt. 24) is of no moment here. What matters is that the United States has a *claim* to an interest in the property, not whether the claim is valid. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) ("It is the party's claim of a protectable interest that makes its presence necessary."); *Turley*, 70 F. App'x at 936 ("A plaintiff cannot avoid the requirements of Rule 19 merely by asserting that a party has no legally protected interest."); *Wendt*, 273 F. Supp. 2d at 1084 (despite Plaintiff's contrary allegations, United States was necessary and indispensable because it had a "colorable claim" that it held land in trust).

(The Solicitor of the Department of the Interior stating, "Immediately after a final judgment was issued in the litigation in 1906, the Bishop conveyed property to the United States to be held in trust for the Chumash Tribe.").)  Moreover, the United States' interest as a trustee for the Tribe is clearly implicated by this lawsuit.  A determination that the land is not tribal trust land held by the United States for the benefit of the Tribe not only would eradicate the Tribe's ability to self-govern on the land, but would also allow it to be alienated, thereby undermining "[t]he whole purpose of trust land," which is to "protect the land from unauthorized alienation."  *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1272 (9th Cir. 1991).

Plaintiff fails to cite a single case contrary to this line of cases.  Instead, Plaintiff argues that the United States is not actually a necessary and indispensable party because its interests are protected, no prejudice will result if the United States is absent, and Plaintiff will have no adequate remedy if its Complaint is dismissed for non-joinder.  (Opp. at 15-19.)  These arguments lack merit, and do not alter the well-settled rule that the United States is an indispensable party in actions involving Indian trust land.

Indeed, as the above-discussed cases establish, the United States' interests are not adequately represented by the Tribe—the United States has specific interests in the land and duties as a trustee that a tribe does not —and prejudice will result without adequate representation of the United States' interest in protecting land to which it holds title in trust for the Tribe.  As to Plaintiff's lack of an adequate remedy, that is "a common consequence of sovereign immunity."  *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002) (further explaining that the sovereign's "interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs").

There is thus no legitimate question as to whether the United States is a necessary and indispensable party.  It is and this case must be dismissed because the United States has not waived its sovereign immunity in order to be joined.

### B. The Complaint Must Also Be Dismissed Because Neither Asserted "Exception" To Tribal Sovereign Immunity Applies

Plaintiff concedes that tribal sovereign immunity generally applies to lawsuits brought against the Tribe and its officers, but argues that the default immunity rule may be circumvented here because: (1) the Court has "in rem jurisdiction"; and (2) the Court may assert jurisdiction over individual tribe members for "off-reservation conduct" under *Ex parte Young* and its progeny. However, neither alleged exception to the Defendants' sovereign immunity applies in this case.

#### 1. Plaintiff Fails To Counter Defendants' Arguments That No "*In Rem*" Exception To Tribal Sovereign Immunity Applies Here

In their Opening Brief, Defendants explained why no alleged *in rem* exception to tribal sovereign immunity applies in this case. (Op. Br., Dkt. 22-1 at 7-11.) Plaintiff baldly asserts that "[t]ribal sovereign immunity does not apply in this case because it is in the nature of an in rem proceeding," (Opp. at 15), but fails to explain how this case can properly be characterized as *in rem* or to counter any of Defendants' other arguments. (*See* Dkt. 22-1 at 9-11.) Indeed, Plaintiff's opposition only confirms that this is *not* an *in rem* proceeding at all: By admitting that it has "no claim that the Defendants own the 75 acres," Plaintiff distinguishes this case from all of the cases it relies upon, each of which involves property alleged to be *held in fee by an Indian tribe or a tribal member*. (Op. Br., Dkt. 22-1, at 9 n. 3, 11.) Moreover, Plaintiff admits that "The Court does not need to address the actual ownership of the property," (Opp. at 18:3-4), yet such an inquiry would be fundamental to a true *in rem* proceeding, which, as previously noted, Plaintiff would have no standing to bring. (Op. Br., Dkt. 22-1 at 10-11.)

#### 2. No *Ex parte Young*-Type Exception To Tribal Sovereign Immunity Applies Here Either

Relying on dicta in *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2034-35 (2014), Plaintiff contends sovereign immunity does not apply to the tribal officers sued in this case because "tribal sovereign immunity does not extend to individual tribe

- 6 -

members who engage in illegal conduct away from an Indian reservation." (Opp. at 12:13-14; *see generally id*. at 7, 11-12.) This argument fails as a matter of law.

As an initial matter, the Court in *Bay Mills* held that tribal sovereign immunity barred Michigan's suit against the Bay Mills tribe for alleged illegal conduct in opening a casino on land outside an Indian reservation. 134 S.Ct. at 2028.[7] In so holding, the Court suggested that Michigan would need to use other avenues to address the illegal gaming activity, such as "suit against tribal officials or employees . . . seeking an injunction for, say, gambling without a license," in an *Ex parte Young*-type proceeding. *Id.* at 2035. However, in referencing the specific manner Michigan could proceed under *Ex parte Young* against individual Indians in the case at hand, the Court did not expand the doctrine in any way. Indeed, the Supreme Court has explicitly cautioned that evaluation of the applicability of *Ex parte Young* "must ensure that the doctrine of sovereign immunity remains meaningful . . . To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine [the principle of sovereign immunity]." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 at 269-70 (1997). *Young* has thus been held to apply to lawsuits seeking prospective injunctive relief against state officers only in certain limited circumstances. Though the application of "the *Young* fiction is an exercise in line drawing," *id*. at 280, this case easily falls on the tribal sovereign immunity side of the line for at least two fundamental reasons.

*First*, the *Ex parte Young* doctrine does not apply when the tribe is the real, substantial party in interest, *i.e*., when the suit is directed to the actions of the tribe itself. *Imperial Granite*, 940 F.2d 1269, is directly on point. In *Imperial Granite*,

---

[7] Specifically, the Court held that the abrogation of sovereign immunity in the Indian Gaming Regulatory Act (IGRA) permitted a suit against the tribe to enjoin only gaming activity located *on* Indian lands, and thus that the abrogation did not apply because the alleged illegal gaming occurred *off*-reservation. *Bay Mills*, 134 S.Ct. at 2032-34.

- 7 -

Plaintiff brought suit, contending that an Indian tribe had illegally denied it access to a road to reach its leased tract of land, which was surrounded by an Indian reservation. Imperial attempted to circumvent the tribe's sovereign immunity from suit under the *Ex parte Young* doctrine by contending that the officials acted beyond their authority. *Id.* at 1271. The Court rejected the argument, stating:

> The complaint alleges no individual actions by any of the tribal officials named as defendants . . . The only action taken by those officials was to vote as members of the Band's governing body against permitting Imperial to use the road. Without more, it is difficult to view the suit against the officials as anything other than a suit against the Band. The votes individually have no legal effect; it is the official action of the Band, following the votes, that caused Imperial's alleged injury.

*Id*. The same is true here. The Complaint does not identify *any* action taken or to be taken by any of the named officers of the Tribe other than that Defendants Pace, Kahn, Gomez, and Dominguez executed and certified the Environmental Evaluation as Business Committee members for the Tribe. (Compl. ¶ 41.) It is the Tribe's actions in pursuing the Project, not any ongoing or future action by the individual officers, that caused Plaintiff's alleged injury, and its suit is in every meaningful sense one against the Tribe. *See also Virginia Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (*Ex parte Young* "does not apply when the state is the real, substantial party in interest") (internal citations and quotation marks omitted). Indeed, the relief requested by Save the Valley cannot be granted by merely ordering the cessation of activity by the Tribal officers, but would instead require the Tribe to take affirmative action to halt or modify its Project. *See Shermoen v. United States*, 982 F.2d 1312, 1321 (9th Cir. 1991) (rejecting application of *Ex parte Young* under such circumstances). Plaintiff thus cannot evade the Tribe's sovereign immunity by attempting to convert the suit against the Tribe's actions in pursuing the Project into one against the officers who voted to approve the Project.[8]

---

[8]   *Moreover,* the Tribe officials acted well within their authority in voting to

- 8 -

*Second, Ex parte Young* does not apply to actions that implicate state (or tribal) sovereignty. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). For this reason, *Ex parte Young* suits cannot be used to obtain damages. *Id.* Likewise, where a suit for declaratory and injunctive relief against officers of a sovereign would have an effect "fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury," *Ex parte Young* does not apply. *Coeur d'Alene Tribe*, 521 U.S. at 287; *see also, e.g.*, *Ex parte Ayers*, 123 U.S. 443 (1887) (state officials are immune from suit for specific performance of a contract, because such relief would unacceptably infringe on state sovereignty). In *Coeur d'Alene Tribe*, the Coeur d'Alene Tribe of Idaho sought a declaratory judgment to establish title to the submerged lands beneath Lake Coeur d'Alene and injunctive relief precluding Idaho officials from regulating the submerged lands. *Coeur d'Alene Tribe,* 521 U.S. at 263. The Court rejected the tribe's attempt to use *Ex parte Young* to evade the state's Eleventh Amendment immunity from suit because "the requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed land and waters . . . long deemed by the State to be an integral part of its territory." *Id.* at 281-82. The Court observed that, if the tribe prevailed, "substantially all benefits of ownership and control [of the land at issue] would shift from the State to the Tribe." *Id.* at 282.

The relief sought by Plaintiff here is strikingly similar. Save the Valley seeks

---

approve the Project and in executing documents regarding the Project. There is no allegation that the named officials exceeded the authority they had been granted by the Tribe, *see Imperial Granite*, 940 F.2d at 1271, nor is there any allegation that the named officials acted beyond their authority under the Compact between the Tribe and the State of California in authorizing an expansion or modification to a Gaming Facility. (*See* Compact, Sec. 6.4.2(b), *available at* http://www.cgcc.ca.gov/documents/compacts/ original_compacts/ Santa_Ynez_Compact.pdf) (providing, *inter alia*, that "all expansions or modifications to a Gaming Facility…shall meet the building and safety codes of the Tribe."). Plaintiff should not be permitted to use *Ex parte Young* to sue to enjoin tribal officials from acting precisely in the manner contemplated by the Tribe and by California.

declaratory and injunctive relief that would essentially strip the Tribe of its beneficial ownership of land long believed—both by the Tribe and by the United States—to be held in trust for it. *See* Section III.A, *supra*. If Save the Valley prevails, the Tribe would lose "substantially all benefits of [trusteeship] and control" of the land; the Tribe thus could no longer exercise its sovereign authority over the land. *See Shermoen*, 982 F.2d at 1320 (rejecting *Ex parte Young* exception because requested relief would dispossess tribe of property it claimed was its reservation). Such a judgment would not only deprive the Tribe of its ability to conduct gaming activities, thus impairing its ability to fund basic tribal government programs, it would eviscerate "the essential base of tribal culture, development, and society." *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987) (citing F. Cohen, *Handbook of Federal Indian Law* 509 (1982)). Indeed, it is hard to conceive of a more direct assault on a tribe's sovereignty than attempting to deprive it of its reservation lands, which are the basis for that sovereignty. Under the reasoning of *Coeur d'Alene Tribe*, such a suit unduly impinges on tribal sovereignty and cannot be brought on an *Ex parte Young* theory.

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their Motion to Dismiss with prejudice.

Dated: June 8, 2015

WILMER, CUTLER, PICKERING, HALE AND DORR LLP

By: /s/ Andrea Weiss Jeffries
    Andrea Weiss Jeffries
    Matthew D. Benedetto
    David Peer

*Attorneys for Defendants*
THE SANTA YNEZ BAND OF CHUMASH MISSION INDIANS OF THE SANTA YNEZ RESERVATION, VINCENT ARMENTA, GARY PACE, KENNETH KAHN, RICHARD GOMEZ, and DAVID DOMINGUEZ

***Appearing specially so as to not waive sovereign immunity***