# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-02463-RGK (MANx) | | Date | July 2, 2015 |
|---|---|---|---|---|
| Title | *SAVE THE VALLEY, LLC v. THE SANTA YNEZ BAND OF CHUMASH INDIANS, et al* | | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order re: Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to Join a Necessary and Indispensable Party (DE 22)**

## I.   INTRODUCTION

On April 3, 2015, Save the Valley, LLC ("Plaintiff") filed a Complaint against the Santa Ynez Band of Chumash Indians (the "Tribe"), Vincent Armenta as Tribal Chairman for the Santa Ynez Band of Mission Indians, and Gary Pace, Kenneth Kahn, Richard Gomez, and David Dominguez as the Business Committee Members for the Santa Ynez Band of Mission Indians (collectively, the "Defendants"). The Complaint seeks declaratory judgment and permanent injunction regarding Defendants' expansion of its resort/casino in Santa Barbara County.

Presently before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join a Necessary and Indispensable Party (the "Motion"). For the following reasons, the Court **GRANTS** Defendants' Motion.

## II.   FACTUAL BACKGROUND

Plaintiff alleges the following:

As far back as 1897, the Catholic Church (the "Church") owned the parcel of land in question (the "Parcel"). In 1897, the Church filed suit to quiet title, and in 1906, the Santa Barbara County Superior Court entered judgment. The judgment stated that the Parcel was exclusively owned by the

Church and that both the Tribe and the United States had no claim of ownership in the Parcel. However, the Tribe retained "an inalienable right of occupancy" in the Parcel, as well as a "common and inalienable right of user" to the waters of Cota Creek. The right to use the water was limited to "domestic use" and for the "[w]atering of stock and for purposes of irrigation . . . but for no other purposes." (Compl. Ex. C, at 6-8, DE 2.)[1] Plaintiff alleges the 1906 judgment remains in effect to this day.

In 1938, the Church attempted to transfer the Parcel to the United States in quitclaim deed. Plaintiff's amended complaint alleges that the United States never accepted ownership of the property. However, portions of the amended complaint retain the original complaint's allegations that the United States did accept the property, but retained the "domestic" and "irrigation" restrictions on the Tribe. Further, Plaintiff alleges that if the Parcel, in fact, was accepted by the United States, it was not officially taken "into trust" as a reservation for any Indian tribe. Rather, it is simply owned by the government in fee and is subject to generally applicable laws.

Although not alleged by Plaintiff, in the 1938 quitclaim deed Plaintiff attached to its Complaint, the Church transferred the Parcel to the Secretary of the Interior of the United States for the express purpose of " the establishment of a permanent Indian Reservation for the perpetual use and occupancy of the Santa Ynez band of Mission Indians . . . ." (Compl. Ex. A, at 6-8, DE 2.)

In July 2014, Defendants announced a project to construct a new twelve-story high-rise hotel and casino expansion, a new restaurant, a new administrative space, and a new five-story parking structure (the "Project"). In response to the proposed construction, various local, county, and state government entities submitted comments to Defendants expressing concerns that the Project would violate multiple state and county laws, ordinances, rules and regulations.

Defendants attempted to address those concerns in an "Environmental Evaluation." However, the evaluation dismissed many of the concerns by claiming that the legal authority in question did not apply to Indian tribal trust lands. Despite the unanswered concerns of multiple levels of government as well as citizens, Defendants have continued to construct the Project.

On April 3, 2015, Plaintiff filed this Complaint to determine the legal status of the Parcel, and to enjoin the Project's construction. Plaintiff alleges that Defendants' construction of the Project violates: (1) the "domestic use only" restriction of the 1906 judgment; and (2) state and local ordinances governing the property, which is owned by the United States in fee.[2]

## III.   JUDICIAL STANDARD

### A.   Lack of Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Under Federal Rule of Civil Procedure ("Rule")

---

[1]The Court notes that, contrary to the text of both the 1906 decision and the 1938 deed attached as exhibits to the complaint, Plaintiff claims the "domestic" and "irrigation" restrictions applied to the entire Parcel, not just the water rights. For the purpose of this order the Court accepts as true the statement of restrictions and rights as described in the exhibits. *See Ott v. Home Sav. & Loan Ass'n*, 265 F.2d 643, 648 (9th Cir. 1958) (holding that if the allegations of the complaint are inconsistent with an attached exhibit, the exhibit must prevail over the allegations).

[2]The Court notes that Plaintiff also claims the Project violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4331, *et seq.* However, NEPA applies only to actions taken by a federal agency, not an Indian tribe, and it provides no private right of action. 42 U.S.C. § 4332; *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1135 (9th Cir. 1998).

12(b)(1), a party may move to dismiss a claim for lack of subject matter jurisdiction. On a Rule 12(b)(1) motion, the plaintiff has the burden of establishing that the court has subject matter jurisdiction. *Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because jurisdiction is a preliminary issue, a court must first determine it has jurisdiction before proceeding to rule on the merits of a case. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). A motion to dismiss on tribal sovereign immunity grounds is brought under Rule 12(b)(1). *Lewis v. Norton*, 424 F.3d 959, 961 (9th Cir. 2005).

### B.  Failure to Join a Necessary and Indispensable Party

Under Rule 12(b)(7), a defendant may bring a motion to compel joinder of a necessary party or to dismiss claims for failure to join an indispensable party under Rule 19. The defendant has the burden of proof for a Rule 12(b)(7) motion. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). To determine if Rule 19 requires joinder of additional parties, the court may consider evidence outside the pleading. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

## IV.  DISCUSSION

Defendants argue that the Court should dismiss Plaintiff's claims because: (1) the Court lacks subject matter jurisdiction due to Defendants' sovereign immunity; and (2) Plaintiff failed to join the United States as a necessary and indispensable party. For the following reasons, the Court **GRANTS** Defendants' motion.

### A.  Lack of Subject Matter Jurisdiction

Under the doctrine of sovereign immunity, a sovereign entity is subject to a court's jurisdiction only when it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The concept of common-law sovereign immunity is not limited to the United States, but also applies to sovereign Indian tribes. *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014). As a dependent sovereign, an Indian tribe's immunity is subject to Congress's unequivocal abrogation or waiver on the part of the tribe. *Id.* at 2030-31. Furthermore, tribal immunity is not limited to activities on a reservation, but extends to activities off the reservation as well. *Kiowa Tribe of Okla v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). While Plaintiff concedes that sovereign immunity generally extends to the Tribe, Plaintiff argues that: (1) there is an exception to sovereign immunity for in rem actions; and (2) sovereign immunity does not protect tribal officers acting unlawfully off the reservation.

#### 1.  *There is no In Rem Exception to Sovereign Immunity*

Plaintiff claims that there is an in rem exception to Defendants' sovereign immunity defense. The Court disagrees.

Plaintiff has failed to provide any binding authority to show that Congress abrogated the Tribe's immunity to in rem actions. In fact, statutory law gives indication that Congress has no intention to abrogate such immunity. Specifically, in the Quiet Title Act ("QTA"), Congress generally abrogated the United States' immunity to actions seeking to quiet title. However, Congress expressly refused to abrogate the United States' sovereign immunity of quiet title actions as it pertains to lands held in trust for Indian tribes or restricted Indian lands. In doing so, it stressed the continued importance of sovereign immunity regarding Indian lands. 28 U.S.C. § 2409a. As to tribal immunity in particular, the Court has not found, nor has Plaintiff shown any congressional intent to abrogate the sovereign immunity of the Indian tribes in in rem actions. The lack of such abrogation is consistent with the spirit and intent articulated by Congress in the QTA. Especially in the light of the QTA's express carve-out for Indian lands, the Court will not create an exception to the long-standing doctrine of sovereign immunity

without clear legislative abrogation. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978). The Ninth Circuit has held sovereign immunity for Indian tribes extends to both declaratory and injunctive claims. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991); *see also Santa Clara Pueblo*, 436 U.S. at 59. Therefore there appears no exception to sovereign immunity in this case.

In support of its position, Plaintiff cites to *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 270 (1992). Similar to the current action, *Yakima* involved issues relating to Indian land. *Id.* In that case, which the Supreme Court characterized as an in rem action, the court ruled on the merits of the case. *Id.* Specifically, the Supreme Court held that the Indian General Allotment Act permitted Yakima County to impose an ad valorem tax upon reservation land patented in fee. *Id.* However, *Yakima* is distinguishable. Unlike the present action, *Yakima* concerned an action by the local government pursuant to an *express abrogation* of tribal power by an act of Congress. *Id.* (emphasis added). Here no such abrogation exists.[3]

## 2. *The Tribal Officers Retain Their Sovereign Immunity*

Plaintiff also argues that the named tribal officers do not have sovereign immunity because they acted unlawfully outside of a reservation. Specifically, Plaintiff alleges that tribal officers: (1) "fraudulently misrepresented" the height of the proposed tower to the FAA; and (2) "fraudulently misrepresented" the Parcel as an Indian reservation not subject to the common laws. (Opp'n at 9-10, DE 26.) Again, the Court disagrees.

Sovereign immunity is not limited to an Indian tribe alone, but also extends to tribal officers operating in their official capacity within the scope of their authority. *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008). This protection further extends to tribal employees acting within the scope of their employment. *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013). However, tribal officers do not have the complete sovereign immunity that Indian tribes do. *Santa Clara Pueblo*, 436 U.S. at 59. A plaintiff can bring suit against a tribal officer seeking prospective injunctive relief for an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Big Horn Cnty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 954 (9th Cir. 2000).

Plaintiff cites to dicta from *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. at 2035, stating that suits are permissible against tribal officers that act outside the scope of their employment or act unlawfully. That case also states that unlawful acts committed beyond the reservation boundaries are subject to any generally applicable state law. *Id.* at 2034. Plaintiff admits that Defendants were operating within the scope of their employment with the Tribe. (Compl. 3-4, DE 2.) However, Plaintiff claims that, because the Parcel is not a reservation, the officers' violations of state law are not protected by sovereign immunity. (Opp'n at 11, DE 26.)

Regardless of whether or not the Parcel is a reservation, tribal immunity precludes claims where the "real, substantial party in interest" is actually the tribe, and the officers are merely attached as nominal defendants in an attempt to circumvent tribal immunity. *Cook* 548 F.3d at 727 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429(1997)). A plaintiff cannot plead around tribal immunity simply by targeting tribal officers. *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013). The court must determine "whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949).

---

[3]Plaintiff also cites cases from various state courts that have allowed in rem proceedings against property owned by Indian tribes. (Opp'n at 15, DE 26.) None of these cases are binding or substantially persuasive in the present case. The cases involve plaintiffs seeking to confirm viable claims of their own rights on properties. Here, Plaintiff has no claim over the Parcel.

Here, Plaintiff seeks to enjoin, stay, and prevent the Tribe from proceeding with any further construction of the Project to prevent harm to property values in Santa Barbara County. (Compl. 11, DE 2.) This relief, nominally addressed to the tribal officers is, in fact, relief against the Tribe.

### 3.   *The Court Has No Subject Matter Jurisdiction*

Thus, both the Tribe and its officers retain sovereign immunity. Accordingly, the Court does not have jurisdiction over Defendants, and dismissal of the case is proper.

### B.   **Failure to Join a Necessary and Indispensable Party**

Even if the Court had subject matter jurisdiction, dismissal would still be warranted for Plaintiff's failure to join a necessary and indispensable party.

Rule 19 governs the compulsory joinder of parties. Under Rule 19, the Court must consider three questions: (1) is there a valid reason for joinder, i.e., is the party necessary; (2) if so, is it feasible to join the party in the action; and (3) if it is not feasible to join the missing party, may the action, "in equity and good conscience" proceed without the absent party, i.e., is the absent party "indispensable" to the proceeding? Fed. R. Civ. P. 19. For the following reasons, the Court finds that the United States is a necessary and indispensable party to these proceedings but cannot be joined. Therefore, under Rule 19(b), this claim must be dismissed.

### 1.   *The United States Is a Necessary Party*

In order to determine whether joinder of a non-party is necessary, the Court must determine if: (1) the Court cannot afford complete relief without the non-party; or (2) the non-party's ability to protect the claimed interest would be significantly impaired in the non-party's absence or leave an existing party with an undue obligation. Fed. R. Civ. P. 19(a).

Although Indian tribes are considered sovereign entities, they are also regarded as "wards of the nation," and "dependent" sovereigns under the protection of federal government. *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 653-54 (1890). As the "guardian" of the Indian tribes, the United States has established a policy of preserving Indian lands for the benefit of the tribes. *United States v. Hellard*, 322 U.S. 363, 366 (1944). As a trustee of Indian land, the United States has a interest in protecting Indian lands against alienation from outside parties. *Carlson*, 510 F.2d at 1339. As a result, the United States is considered a necessary party of any suit that might interfere with this interest. *Id.*

### 2.   *It Is Not Feasible to Join the United States*

As stated in Section IV.A.1., above, Congress expressly retained immunity in suits for quiet title of lands held in trust for Indian tribes or restricted Indian lands. 28 U.S.C. § 2409a. This exception is not limited specifically to quiet title actions, but applies to any determination by the court that would have the effect of quieting title. *Wendt v. Smith*, 273 F. Supp. 2d 1078, 1083 (C.D. Cal. 2003). Furthermore, the very purpose of sovereign immunity is that the Court need not examine in depth the merits of the sovereign's position. *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir. 1987). Therefore, to invoke sovereign immunity, it is sufficient that there is a "colorable" claim that the land has been held by the United States in trust for the Tribe. *Alaska v. Babbitt*, 182 F.3d 672, 675 (9th Cir. 1999).

Here, Plaintiff's claim is, in effect, a quiet title action. To determine whether relief on the merits is warranted, the Court would be required to determine the ownership of the Parcel and the manner in

which the Parcel is owned. Additionally, the Department of the Interior states that the Parcel has been held in trust for the Tribe since 1906, and the 1938 deed clearly expresses the intent to establish the Parcel as a permanent reservation for the Tribe. (Benedetto Decl. Ex. A, at 8, DE 23; Comp. Ex. A, at 1, DE 2.) These facts are sufficient for at least a colorable claim that the property is held in trust for the Tribe, and is sufficient to assert a defense of sovereign immunity.

Because the United States has not consented to jurisdiction in this case, it cannot be joined as a party.

### 3.     *The United States as an Indispensable Party*

If a party is necessary, but cannot be joined in the case, the Court must determine if the case can continue in the non-party's absence "in equity and good conscience . . . ." Fed. R. Civ. P. 19(b). The Ninth Circuit has held that in claims *brought by non-Indians* for the purpose of alienating rights to Indian lands, the United States is an indispensable party and the claim cannot continue in its absence. *See Jachetta v. United States*, 653 F.3d 898, 907 (9th Cir. 2011); *Imperial Granite Co.*, 940 F.2d at 1272; *Carlson*, 510 F.2d at 1339; *Green v. Wilson*, 331 F.2d 769, 770 (9th Cir. 1964).[4]

There is no dispute that Plaintiff is a non-Indian, seeking to alienate rights to Indian lands. Therefore the action cannot continue in the absence of the United States

### 4.     *Dismissal Is Warranted*

Here, the United States is both necessary and indispensable, but cannot be joined due to sovereign immunity. Therefore, the Court must dismiss this action. *See Carlson*, 510 F.2d at 1339.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

_____  :  _____

**Initials of Preparer**                    _____

---

[4]The Court notes that the United States is not an indispensable party in claims regarding the rights to Indian lands brought by the Indian tribe. *See Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1069 (9th Cir. 2010); *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251 (9th Cir.1983); *Fort Mojave Tribe v. Lafollette*, 478 F.2d 1016, 1018 (9th Cir. 1973).